IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

IVAN BRYSON,                         :
                                     :
   Plaintiff,                       :
                                     :   Civil Action No. _____
                                     :
   v.                               :
                                     :
AUGUSTA-RICHMOND COUNTY, :
CRYSTAL PAGE individually and        :
in her official capacity as          :
Accountability Court Coordinator,    :
PENFIELD ADDICTION                   :
MINISTRIES, INC., MIKE               :
WALKER, NATHAN HULSEY,               :
JAMIE SCRUGGS, HUNTER                :
BICKERS, BILL KING, DALLAS           :
BENNETT, and DONNIE                  :
PLUMMER,                             :
                                     :
   Defendants.                      :
_____ :

## COMPLAINT

COMES NOW, Plaintiff and respectfully shows:

## I. PRELIMINARY STATEMENT

1.

This is an action to recover monetary damages arising out of Defendants' violations of Plaintiff's rights as secured by the Civil Rights Act, 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and the

1

Religious Land Use and Institutionalized Persons Act (õRLUIPAö). Plaintiff also brings claims for state torts and violations of the Georgia Constitution. Each Defendant is subject to the jurisdiction of this Court.

## COUNT ONE

2.

Each Defendant named above is sued for actions in violation of RLUIPA. However, Defendant Page is only sued in her official capacity and Defendant Penfield Addiction Ministries, Inc. (hereinafter Penfield), is also Defendant in this Count.

3.

The Court has jurisdiction of the RLUIPA claims pursuant to 28 U.S.C. § 1331 and 1343.

4.

Plaintiff is a citizen of the United States who at all relevant times was in the custody and control of the State of Georgia and housed in a correctional facility run by Penfield from April 26, 2022 until July 21, 2022.

5.

Plaintiff is Jewish.

6.

Plaintiff was a participant in the Richmond County Accountability Court Program since May 2021. On or about April 26, 2022, Plaintiff was ordered to attend a rehabilitation program at Penfield for a period of six months after being sentenced on April 19, 2022. Before arriving at Penfield, he was not informed of the Christian nature of Penfield's programming. After he arrived, Plaintiff learned that Penfield's programming is intensively Christian, and he objected to remaining there. He was told that Penfield was the recipient of a grant to provide rehabilitation services for participants in the Accountability Court program and that no other options were available. Apparently, Plaintiff's only other option was to end his participation in Accountability Court and be sentenced for up to twelve months in jail due to a DUI charge pending since 2018.

7.

Upon arrival at Penfield, he was asked questions such as "Have you been saved?" and "Have you given your life to Jesus?" He told the admission counselors that he is Jewish. During the early part of his time at Penfield, Plaintiff was forced to participate in Christian worship services. Plaintiff objected to his forced participation in this and similar activities. But despite the Accountability Court's knowledge and Penfield's knowledge that Plaintiff is Jewish and has objected to participation in Christian religious activities, he was still being required to attend

Bible study multiple times each day and attend "Celebrate Recovery" sessions at churches, which include worship activities, Christian praise and singing, and a Christian sermon. This is consistent with Penfield's advertised programming. Penfield's website states that it has been "[r]eclaiming Men and Women with Substance Abuse Disorders Through Christ and Christian Love since 1979," and touts its "Christ-centered rehab approach."

8.

Mr. Bryson was also required to complete weekly Christian reading/reflection assignments. For example, the assignment entitled "Journey Through Spiritual Bootcamp" promotes having "faith in Christ, fellowship with Christ, and [to] follow after Christ." Among other things, the assignment required Mr. Bryson to answer the question "what can you do beginning today to become a better Christian?" Another assignment had content with apparent anti-Semitic connotations, including an image of what appears to be a cross stabbing a Star of David, and the pronouncement that "[t]he Jews had precipitated Jesus' crucifixion with false charges and a kangaroo court."

9.

Plaintiff was forced to attend church and bible services from a Christian perspective. He was subject to ridicule from other participants and counselors as

well as one counselor who was aggressively anti-Semitic. He was required to complete anti-Semitic assignments.

10.

Specifically, when Plaintiff was admitted to the program at Penfield Ministries on April 26, 2022. Plaintiff informed Defendants Hulsey and Scruggs who were staff members at Penfield that he was Jewish  after he was repeatedly asked many times if he had been saved.

11.

After telling the two staff members that he was Jewish, he was informed that he would still be required to participate in all of the Christian activities including attending church 3 times a week.

12.

On April 27, 2022, Plaintiff began a daily routine of Christian bible study and Church worship services.

13.

On April 28, 2022, Plaintiff spoke to Mr. Bickers about being Jewish. Mr. Bickers took no steps to stop this violation of Plaintiff's rights.

14.

On April 30, 2022, Plaintiff was required to attend bible study and prayers. He was also required on May 2, 2022; May 4, 2022; May 12-15, 2022; May 18-19,

2022; May 23-25, 2022; May 28,2022; May 30, 2022; June 1-2, 2022; June 7, 2022; June 7, 2022; June 14-15, 2022; June 17, 2022; June 21-22, 2022; June 28-29, 2022; July 4, 2022; July 6, 2022 (3 Bible study classes); July 8, 2022; July 11-12, 2022; and July 15, 2022.

15.

On May 3, 2022, Plaintiff met with a Penfield counselor, Mike Walker, and again spoke to him about being Jewish and having to participate in all of the Christian activities, Mr. Walker took no action in response.

16.

On May 4, 2022, Plaintiff had a similar conversation with Bill King, who was the minister/director of Defendant Penfield's Union Point campus. Mr. King took no action in response. Instead, at another required worship service, he asked Plaintiff "So, what's your take on this Jesus thing now?"

17.

On May 20, 2022, Plaintiff's wife contacted Crystal Page who told Defendant Penfield's employees that Penfield could not require Plaintiff to participate in Christian activities. John Walker was in the room listening to Plaintiff's side of the conversation.

18.

Ms. Page asked Plaintiff õdoes it really offend you that much?ö Plaintiff replied it was not his faith. She told Plaintiff that she would look at other programs but the court would have to approve it and that Plaintiff would have to pay for the program because the grant would only pay for Penfield.

19.

By May 21, 2022, Penfieldøs employees had been told other participants in the program. Plaintiff began receiving comments saying õthey heard [that Plaintiff had] a new religion.ö

20.

On June 3, 2022, Plaintiff was moved to another Penfield campus.

21.

On June 6, 2022, Plaintiff met with Dallas Bennett who when told Plaintiff was Jewish responded with a chuckle, õso am I.ö Plaintiff told him that he was Jewish and Mr. Bennett replied õso am Iö. Mr. Bennett is not and was not of the Jewish faith.

22.

On June 10, 2022, Ms. Page of the Accountability Court called and Plaintiff informed her that he was still being forced to participate in Christian activities. She called Penfield again.

23.

Dallas Bennett called Plaintiff a liar. He told Defendant Page that Plaintiff was not Jewish because he didn't call God Jehovah. Plaintiff replied that Jewish people don't call God Jehovah and do not use His name in vain.[1] He told Plaintiff just to go ahead and say I am Atheist.

24.

On June 13, 2022, Plaintiff was no longer required to attend the Bridge Church for Sunday services or bible study. But he was still required to listen to sermons or watch Christian movies.

25.

On June 16, 2022, Plaintiff was required to attend a "Celebrate Recovery" ceremony at the First Baptist Church in Tifton. He was required to do so again on June 23, 2022.

26.

On June 24, 2022, Plaintiff was required to watch 2 episodes of a miniseries allegedly based on the Old Testament. Mr. Bennett introduced the film as "dedicated to our Jewish brother." The film discusses events leading up to the Crucifixion of and Resurrection of Jesus.

---

[1] The Hebrew name is יהוה, pronounced Yahweh. Jehovah appears in William Tyndale's 16th century bible and the Geneva Bible and the King James version.

27.

On July 2, 2022, Mr. Bennett gave Plaintiff an assignment entitled õJourney Through Spiritual Bootcamp. What is a Christian?ö

28.

On July 7, 2022, Mr. Bennett gave Plaintiff another assignment entitled õJourney from Religion to Relationship, When You Mess Up Big Time.ö On the front there is a picture of a cross stabbing into the Star of David. Mr. Bennett said in front of the class, õIVAN, you have to do these 2 assignments. Discipline equals Freedom.ö He then had the class repeat, õDiscipline equals Freedom.ö The assignment is about Saul taking part in torturing and killing Jesusø followers and Jews killing Jesus.

29.

Even after receiving a complaint from prior attorneys of Plaintiff, Ms. Page took no effective action to stop Penfieldøs religious indoctrination of Plaintiff.

30.

On July 19, 2022, Mr. Plummer and Mr. Bennett met with Plaintiff. Mr. Plummer asked Plaintiff if he was not happy at Penfield, Plaintiff tried to explain that itøs not Penfield but that as a Jewish man, Plaintiff does not belong there and that he has been forced to participate in a faith not on his own.

31.

On July 20, 2022, Plaintiff got up and was told everybody was going to the lake today. Participants were loading up fishing poles, coolers, etc. Plaintiff got ready to go. Right before leaving, Mr. Bennett told Plaintiff to stay behind to complete an assignment of watching 2 ½ hour video of a rabbi speaking. He said they are going to have a bible study at the lake and that is why Plaintiff had to stay behind. The retuning participants said they did not have a bible study.

Upon Mr. Bennett's return to the facility, he took Plaintiff to his office. He discussed the video with Plaintiff briefly. He stated that his wife was causing a lot of trouble in Augusta and bringing heat on him. He said Plaintiff was close minded and that he is Christian and Jewish. He said we both believe in the same God. He said he was going to try to keep Plaintiff in Penfield. Plaintiff again tried to explain to him why it is uncomfortable to be a Jewish man in a Christian facility. He said Plaintiff was trying to trick him and Richmond County. Plaintiff told him he was not going to have a debate with him about a religion. He said Plaintiff does not believe in the Jewish faith and again said Plaintiff was trying to trick everyone. Plaintiff told him he was confirmed, ceremoniously circumcised, had a bar mitzvah. His whole life he has been Jewish, his family is Jewish, and he doesn't have to prove to him how Jewish he was.

32.

It was not until a week after July 14, 2022 that Plaintiff was transferred out of Penfieldøs facility.

33.

Plaintiff had previously complained to Ms. Page, to member of the Drug Accountability Court, and to officials of August-Richmond County. He had made numerous complaints to Penfield and the employees discussed above.

34.

On or about April 25, 2019, Michael Walker as Chief Executive Officer of Penfield and Hardie Davis Jr. on behalf of Augusta-Richmond County signed a contract attached as Exhibit C to provide probation service.

35.

The contract was to run from May 1, 2019 until September 29, 2023.

36.

Pursuant to II C, the Court Judge, the Honorable David Watkins had authority to execute without further action of the State Court of Richmond County, any change orders to be agreed upon by the Contractor as stated above so long as their total effect did not materially alter the terms of this Agreement or materially increase the total amount to be paid under this Agreement, as set forth in Section III below.

37.

It was Defendant Page, acting as the Accountability Court Coordinator for Augusta-Richmond County who had applied for federal funds in the first place. Those funds were to be used by Defendant Penfield pursuant to Exhibit C.

38.

Each and every Defendant and members of the Accountability Court was well aware of the coercive Christian activities of Penfield. Moreover the Judge, the Honorable David Watkins, Defense Attorneys Tianna Bias and  William Fleming, Renee Bill and  Shereen Marcus, Ashanti Lilley Pounds, and Dr. Bill King, who was the Director of the Menøs Campus for Penfield were also aware and numerous other employees as set out above were also aware.

39.

Defendants only had to look to Penfieldøs website attached as Exhibit B which promised a õChrist-centered treatment approachö while õemphasizing the powers of a personal relationship with Jesus and the transformation native of His love and grace.ö That website set out the policy and practice of Penfield which was in fact, to indoctrinate Plaintiff and other probationers into the Christ-centered doctrine.

40.

August-Richmond County and Penfield received federal financial assistance for the programs and activities of the Accountability Court.

41.

Governments may not impose substantial burdens on the religious exercises of institutionalized persons even if the burden results from a rule of general applicability. 42 U.S.C. § 2000cc-1(a).

42.

Plaintiff was an institutionalized person within the meaning of RLUIPA. 42 U.S.C. § 2000cc-1.

43.

Defendant Augusta-Richmond County were acting under color of State law and is a õgovernment within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(4). Defendant Crystal Page sued under her official capacity, is also covered under 42 U.S.C. § 2000cc-5(4)(A)(iii) as a person who acted under color of state law.

44.

The actions herein recounted were taken pursuant to the policy of August-Richmond County and of the final decision-makers for the County.

45.

The program at issue was financed by Augusta-Richmond County and provides $ 1,058.00 per month not to exceed $12,700 annually per participant for treatment services by the Accountability Courts Program. The program has up to 40

13

participants each year as revealed in Defendantsø SAMHSA filings. In other words, Augusta-Richmond County provides the lionøs share of funding.

46.

In addition, Defendant Crystal Page regularly wrote grant applications for Penfieldøs programs as part of her duties for Augusta-Richmond County.

47.

Because of the coercive power the Council of Accountability Court Judges and Accountability Court in requiring Plaintiff to attend Penfieldøs probation program or else be sent to prison and/or because the County and Defendant Page has provided significant encouragement both overt and covert each of the parties herein, particularly Penfield, was acting under color of state law.

48.

Defendant County has delegated to Penfield probation functions that have traditionally been the exclusive prerogative of the State; by imposing conditions for retaining Plaintifføs probationary status, each Defendant became a state actor while performing their functions.

49.

Defendant Augusta-Richmond County agreed with Defendant Penfield that Penfield would provide õfor those adult offenders referred to the State Court of Richmond Accountability Courts.ö

50.

The contract between Defendant August-Richmond County and Defendant Penfield reflects a joint enterprise.

51.

The contract between the parties cannot be õmodified or altered in any way without the express agreement of all parties.ö

52.

The contract between Augusta-Richmond County and Defendant Penfield acknowledge that Penfield can provide õspecialized knowledge, skills and training...necessary to perform the work contemplated under the Agreement. See also Ex C IV A.

53.

The contract provides that õthe public interest will be served by this Agreement.ö

54.

Augusta-Richmond County agrees to provide Penfield with compensation õspecifically for treatment services provided for the Accountability Courts Program.ö

15

55.

The contract gives Augusta-Richmond County the right to require that Penfield õfollows the directions of the Court with regard to such services only.ö

56.

Penfield agrees to be bound by the õRichmond County Code of Ethics.ö

57.

Augusta-Richmond County through the Drug Accountability Court controls õany description or information concerning the work produced as a result of Exhibit C without written permission of the State Court.

58.

As set out above, the acts, omissions, policies, and procedures of Defendants deprived Plaintiff of his free exercise of religion as insured by RLUIPA, by unlawfully enforcing a substantial burden on Plaintifføs religious exercise without using the least restrictive means of achieving a compelling governmental interest. Defendants forced Plaintiff to forsake his Jewish heritage and religion and to observe Christian Doctrine. Ms. Page and Augusta-Richmond County failed to take appropriate steps to stop Penfieldøs unconstitutional practices. Indeed, at one point, they were prepared to have plaintiff pay for his own probation if he would not submit to Christian religious practices.

16

59.

Defendantsø failure to comply with RLUIPA has resulted in harm to Plaintiff. Defendants had no compelling governmental interest in requiring Plaintiff to observe Christian religious belief and doctrine. Even if they did, they did not use the least restrictive means of achieving whatever that compelling interest would be.

60.

The substantial burden Defendants imposed on Plaintifføs religious exercise affects programs or activities that receive Federal financial assistance.

61.

Plaintiff is entitled to compensatory damages in the amount of $500,000 from the County and Ms. Page, in her official capacity, and $1,000,000 from Penfield.

62.

Plaintiff is entitled to reasonable attorney fees under 42 U.S.C. § 1988 and because of Defendantøs bad faith.

## **COUNT TWO**

63.

Only Defendants Augusta-Richmond County, Crystal Page in her official capacity, and Penfield Addiction Ministries, Inc. are sued in this Count.

17

64.

Each Defendant sued herein is subject to the jurisdiction of this Court. This Court has jurisdiction of these claims under 28 U.S.C. §1343.

65.

Plaintiff brings claims under 42 U.S.C. § 1983 for violation of his First and Fourteenth Amendment rights to be free of the establishment of religion.

66.

Paragraphs 4-40 and 42-55 are realleged as though fully set out herein.

67.

As set out above, the acts, omissions, policies, and procedures of Defendants established religious doctrine that Plaintiff was required to comply with. Defendants forced Plaintiff to forsake his Jewish heritage and religion and to observe Christian Doctrine.

68.

Plaintiff is entitled to compensatory damages in the amount of $500,000 from Defendants Page and Augusta Richmond County and $1,000,000 from Defendant Penfield.

69.

Defendant Penfield acted with a reckless or callous disregard of or indifference to the rights of Plaintiff and Plaintiff is entitles to punitive damages of $1,000,000.

70.

Plaintiff is entitled to reasonable attorney fees under 42 U.S.C. § 1988.

## **COUNT THREE**

71.

Each named Defendant is being sued in this count for violation of Plaintiff's rights to freely exercise his religion under First and Fourteenth Amendment. Defendant Page is sued in both individual and official capacities.

72.

The Court has jurisdiction of Plaintiff's free exercise claims pursuant to 28 U.S.C. §1343.

73.

Paragraph 66 is realleged as fully set out.

74.

Plaintiff is entitled to compensatory damages from Defendants Page and Augusta Richmond County in the amount of $500,000.

75.

Plaintiff is entitled to compensatory damages from:

a. Defendant Penfield in the amount of $1,000,000.
b. Defendant Scruggs in the amount of $100, 000.
c. Defendant Hulsey in the amount of $100,000.
d. Defendant Bickers in the amount of $ 50,000.
e. Defendant Walker in the amount of $ 50,000.
f. Defendant King in the amount of $ 75,000.
g. Defendant Bennett in the amount of $1,000,000.
h. Defendant Plummer in the amount of $250,000.

76.

Defendant Penfield acted with reckless or callous disregard or indifference to

the rights of Plaintiff as did each Defendant named in paragraphs 74 and 75.

77.

Plaintiff is entitled to punitive damages from:

a. Defendant Penfield in the amount of $ 1,000,000.
b. Defendant Scruggs in the amount of $ 50,000.
c. Defendant Hulsey in the amount of $ 50,000.
d. Defendant Bickers in the amount of $ 50,000.
e. Defendant Walker in the amount of $ 50,000.
f. Defendant King in the amount of $ 75,000.
g. Defendant Bennett in the amount of $1,000,000.
h. Defendant Plummer in the amount of $250,000.

78.

Plaintiff is entitled to reasonable attorney fees.

20

## COUNT FOUR

79.

Paragraphs 3, and 66-69 are realleged.

80.

The Court has jurisdiction of this claim under to 28 U.S.C. §1367 as it arises under the same transaction as the prior counts of this complaint.

81.

Only Defendant Page, in her individual capacity, and Penfield are sued in this Count.

82.

Defendant's conduct violated Plaintiff's rights to freedom of conscience under the Georgia Constitution Art. I Sec. I Para III.

83.

Each Defendant acted under color of state law.

84.

Defendant Page acted with a deliberate intention to cause injury to Plaintiff. Her actions were intentionally taken with actual malice or corruption. Defendant Penfield is liable for the actions of its employees under the principles of respondeat superior. These actions were taken intentionally with actual malice, or corruption. Defendant Penfield is liable for its corporate actions.

21

85.

Defendant Page is indebted to Plaintiff in the amount of $ 500,000. Defendant Penfield is entitled to Plaintiff in the amount of $ 1,000,000.

86.

Plaintiff is entitled to punitive damages because each Defendant showed willful misconduct, malice, wantonness, oppression, or that entire want of care raising the presumption of conscious indifference to consequences. Defendant Penfield is liable for $1,000,000 in punitive damages and Defendant Page is liable for $500,000 in punitive damages.

87.

Plaintiff is entitled to attorney fees because of the intentional acts of these Defendants.

## COUNT FIVE

88.

Paragraphs 79-80 are realleged as though fully set out.

89.

Each Defendant named in the complaint except for Defendant Augusta-Richmond County and Defendant Page in her official capacity, is sued in this count.

22

90.

Defendantsø conduct violated Plaintifføs rights to his religious opinions and not to be harassed or persecuted for such opinion.

91.

Each Defendant acted under color of state law.

92.

Each Defendant acted with a deliberate intention to cause injury to Plaintiff. Their actions were intentionally taken with actual malice or corruption. Defendant Penfield is liable for the actions of its employees under the principles of respondeat superior. These actions were taken intentionally with actual malice, or corruption.

93.

Plaintiff is entitled to compensatory damages from:

a. Defendant Penfield in the amount of $1,000,000.
b. Defendant Scruggs in the amount of $100,000.
c. Defendant Hulsey in the amount of $100,000.
d. Defendant Bickers in the amount of $ 50,000.
e. Defendant Walker in the amount of $ 50,000.
f. Defendant King in the amount of $ 75,000.
g. Defendant Bennett in the amount of $1,000,000.
h. Defendant Plummer in the amount of $250,000.
i. Defendant Page in her individual capacity, in the amount of $ 75,000.

94.

Each Defendant above named showed willful misconduct wantonness, oppression or that entire want of care which raises the presumption of conscious

23

indifference to consequence except for August-Richmond County and Crystal Page in her official capacity.

95.

They are each liable for punitive damages as follows:

      a. Defendant Penfield in the amount of $1,000,000.
      b. Defendant Scruggs in the amount of $100,000.
      c. Defendant Hulsey in the amount of $100,000.
      d. Defendant Bickers in the amount of $ 50,000.
      e. Defendant Walker in the amount of $ 50,000.
      f. Defendant King in the amount of $ 75,000.
      g. Defendant Bennett in the amount of $1,000,000.
      h. Defendant Plummer in the amount of $250,000.
      i. Defendant Page in her individual capacity, in the amount of $ 75,000.

96.

Plaintiff is entitled to attorney fees because of the intentional acts of these Defendants.

## COUNT SIX

97.

Paragraphs 88-89 are realleged as though fully set out. Ms. Page is not sued in any capacity.

98.

Plaintiff suffered a wanton, voluntary, or intentional wrong for many months by engaging in conduct that is atrocious, and utterly intolerable to anyone being in a free society where religious freedom is honored and revered.

24

99.

The conduct of Penfield and its employees was intentional or reckless.

100.

The conduct of Penfield and its employees was extreme and outrageous.

101.

The injuries suffered by Plaintiff were the proximate result of such conduct.

102.

The injuries suffered were severe.

103.

Each Defendant acted with a deliberate intention to cause injury to Plaintiff. Their actions were intentionally taken with actual malice or corruption. Defendant Penfield is liable for the actions of its employees under the principles of respondeat superior. These actions were taken intentionally with actual malice, or corruption.

104.

Plaintiff is entitled to compensatory damages from:

a. Defendant Penfield in the amount of $1,000,000.
b. Defendant Scruggs in the amount of $100,000.
c. Defendant Hulsey in the amount of $100,000.
d. Defendant Bickers in the amount of $ 50,000.
e. Defendant Walker in the amount of $ 50,000.
f. Defendant King in the amount of $ 75,000.
g. Defendant Bennett in the amount of $1,000,000.
h. Defendant Plummer in the amount of $250,000.

105.

Plaintiff is entitled to punitive damages because each Defendant showed willful misconduct, malice, wantonness, oppression, or that entire want of care raising the presumption of conscious indifference to consequences.

106.

Plaintiff is entitled to compensatory damages from:

a. Defendant Penfield in the amount of $1,000,000.
b. Defendant Scruggs in the amount of $100,000.
c. Defendant Hulsey in the amount of $100,000.
d. Defendant Bickers in the amount of $ 50,000.
e. Defendant Walker in the amount of $ 50,000.
f. Defendant King in the amount of $ 75,000.
g. Defendant Bennett in the amount of $1,000,000.
h. Defendant Plummer in the amount of $250,000.
i. Defendant Page in her individual capacity, in the amount of $ 75,000.

107.

Plaintiff is entitled to attorney fees because of the intentional acts of these Defendants.

WHEREFORE, Plaintiff prays:

1) For damages as set out above;

2) For punitive damages;

3) For jury trial;

4) For attorney fees; and

5) For such other and further relief as is just and proper.

Respectfully submitted on April 15, 2024.

/s/ Ralph Goldberg
Ralph Goldberg
Ga. Bar No. 299475
Attorney for Plaintiff

Goldberg & Cuvillier, P.C.
3469 Lawrenceville Hwy., Ste. 102
Tucker, Georgia 30084
(770) 670-7343; (770) 670-7344 (Fax)
attorneygoldberg@hotmail.com

27